UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ST. BARNABAS HOSPITAL,

                       Petitioner,

          -against-

1199SEIU, UNITED HEALTHCARE
WORKERS EAST,

                   Respondent.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___8/2/16___

16-CV-04117-VEC

MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Petitioner St. Barnabas Hospital ("St. Barnabas") brings this action against Respondent 1199SEIU, United Healthcare Worker's East ("1199SEIU"), a labor union, to vacate an arbitration award that ordered the reinstatement of Christina Sewell, who was an employee of St. Barnabas and a member of 1199SEIU. Respondent removed this matter from the Supreme Court of the State of New York pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Respondent has cross moved to confirm the arbitration award. For the reasons discussed below, the Court DENIES the petition to vacate and CONFIRMS the arbitration award.

## BACKGROUND

This case centers on a single question of fact—whether Sewell made a threatening statement while working at St. Barnabas on January 7, 2014. Sewell worked in St. Barnabas' call center, which consisted of a single room with cubicles. Pet. to Vacate Arbitration Award Ex. A ("Arb. Award") at 2 (Dkt. 3-2). Four other employees were working with Sewell in the call center at the moment she allegedly made the threat. *Id.*

On January 7, 2014, the call center Director, Ellen Cantor, called Sewell into her office to suspend Sewell for chronic tardiness. *Id.* at 2-3. Sewell explained that she had been late because she was caring for a sick family member, and her union delegates argued that suspension was unwarranted because her prior discipline for tardiness had been an oral warning. *Id.* at 3. Cantor decided to impose a written warning as discipline (rather than to suspend Sewell). *Id.* Moreover, during the meeting Sewell learned that she could apply for leave under the Family Medical Leave Act ("FMLA") so that she could care for her sick family member without risking further employment discipline. *Id.*

Shortly after returning to her desk, Sewell stood up and announced she was going on her break. *Id.* Sewell claims she announced loudly, "I'm going for coffee. I'm going on break." *Id.*[1] According to Sewell, her co-worker Peggy Santiago, who sat in the cubicle across from her, nodded her head in acknowledgement while on the phone. *Id.* at 3-4. Sewell also saw Emilyann Montes, another co-worker who occupied the cubicle next to Santiago's, on the phone when she announced her break. *Id.* at 4. Employees in the call center wear a headset covering one ear while taking calls. *Id.* at 13.

In contrast to Sewell's version of events, Santiago and Montes claimed to have heard Sewell announce she was going on a break and returning with a shotgun. *Id.* at 4, 5, 6. The two other employees in the call center room at the time did not hear Sewell make the alleged threat. *Id.* at 5. Santiago and Montes reported the alleged threat to Cantor while Sewell was out of the room on break. *Id.* at 5, 6.

---

[1]       Under the rules of the call center, employees were required to announce to their coworkers when they were going on break. Arb. Award at 13.

Sewell was locked out of the call center room and was escorted by security officers to the Security Office, where she was interviewed. *Id.* at 4. Sewell denied making the statement, emptied her purse, and offered to have her locker searched. *Id*. No shotgun was found, *id.* at 4, 13, the police were not called, *id.* at 7, and Sewell was not asked to provide a written statement, *id.* at 7, 14. Santiago and Montes each made written statements, and each denied being on the phone when Sewell made the alleged threat. *Id.* at 5, 6. Within hours of the incident, St. Barnabas terminated Sewell for threatening violence in the workplace. *Id.* at 7, 14.

Pursuant to its collective bargaining agreement with St. Barnabas, 119SEIU initiated an arbitration proceeding to get Sewell reinstated. Pet. to Vacate Arbitration Award ¶ 31; Resp. Opp. at 2 (Dkt. 9). The parties agreed that the sole issue before the arbitrator was whether Sewell made the alleged threat, and they agreed that if she did make the statement, there was just cause for her termination. Arb. Award at 1.

Acknowledging St. Barnabas' desire to ensure the safety of its employees from threats of violence, the arbitrator nevertheless determined that St. Barnabas had not met its burden of proof to justify Sewell's termination, finding that after "careful review of the evidence, [he was] not convinced that [Sewell] made the statement about the shotgun attributed to her by two co-workers." *Id.* at 12. The arbitrator found that St. Barnabas' investigation was rushed and not thorough and concluded that Sewell did not make the alleged threat. *Id.* at 12, 14. In support of his conclusion, the arbitrator noted that St. Barnabas failed to: question all witnesses, ask Sewell to provide a written statement, generate a security report, or call the police. *Id.* at 7, 11, 14.

In addition, the arbitrator explained his reasons for doubting that Sewell made the threat, including: the evidence showed that Sewell was relieved and was not upset after her meeting with Cantor in light of the  more lenient discipline that was imposed and the information she

received about the availability of FMLA leave, *id.* at 12; there was no evidence indicating Sewell had immediate access to a shotgun, *id.* at 13; Montes testified only that she "thought" she heard the threat, *id.* at 13 n.3; Sewell's testimony that Montes and Santiago were on calls at the time Sewell announced her break and would have been unlikely to hear Sewell clearly, *id.* at 13; and the existence of evidence indicating there was "friction in the office" between Sewell and her Spanish-speaking coworkers, *id.* at 13-14.

## DISCUSSION

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, grants federal courts jurisdiction over petitions to vacate or confirm labor arbitration awards.[2]  *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990).  The LMRA not only confers jurisdiction but has created "a body of federal law analytically distinct from the [Federal Arbitration Act ("FAA")]."  *Local Union No. 1 of the United Assoc. of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus. of the U.S. and Can. v. Bass*, No. 13-CV-3837 (NGG)(VVP), 2015 WL 1402884, at *5 (E.D.N.Y. March 25, 2015) (quoting *Coca-Cola Bottling Co. of N.Y., Inc. v. Soft Drink and Brewery Workers Union Local 812 Int'l. Bhd. of Teamsters*, 242 F.3d 52, 54-55 (2d Cir. 2001)).

The LMRA maintains "a clear preference for the private resolution of labor disputes without government intervention."  *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)) ("*N.F.L. Mgmt.*

---

[2]        Section 301 states: "Suits for violations of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).

Counsel"). "The Supreme Court has recognized that the LMRA expresses a federal policy of settling labor disputes by arbitration, which would be undermined if courts had the final say on the merits of the awards." *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension and Welfare Funds v. Sanders Const., Inc.*, No. 13-CV-5102(JFB)(ARL), 2014 WL 5140297, at *3 (E.D.N.Y. Oct. 14, 2014) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)) (internal quotation marks omitted). Consequently, when asked to review the decision of an arbitrator, "the courts play only a 'limited role.'" *Id.* (quoting *Misco*, 484 U.S. at 36).

Courts are "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *N.F.L. Mgmt. Council,* 820 F.3d at 536. A court is to "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* An arbitrator's award must be confirmed "[a]s long as [it] 'draws its essence from the collective bargaining agreement' and is not merely an exercise of the arbitrator's 'own brand of industrial justice.'" *Id.* at 537 (quoting *Niagara Mohawk*, 143 F.3d at 714). Even serious factual errors committed by the arbitrator do not provide a sufficient basis for the reviewing court to refuse to enforce an arbitration award. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). This Court's task is not to decide how it would have conducted the arbitration or how it would have resolved the dispute but "simply to ensure the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority.'" *N.F.L. Mgmt. Council,* 820 F.3d at 532 (quoting *Misco*, 484 U.S. at 38).

In seeking to vacate the arbitrator's award, Petitioner effectively invites this Court to second guess the arbitrator's factual findings. St. Barnabas argues that the arbitrator exceeded

5

his authority because (1) the award lacks any rational basis as the arbitrator ignored Santiago's and Montes' testimony, and (2) the award violates public policy on the ground that it tacitly permits threats of violence in the workplace.  Pet. to Vacate Arbitration Award ¶¶ 2-5; Pet. Mem. at 6-8 (Dkt. 3-2).  In response, 119SEIU argues that St. Barnabas may not question the arbitrator's findings of fact and that the award does not violate public policy.  Resp. Opp. at 4, 5, 7.

This Court recognizes the serious threat of gun violence in the workplace, particularly in light of recent highly publicized events, and is sympathetic to St. Barnabas and the difficult position in which it was placed upon learning of the alleged threat.  Nevertheless, as the cases discussed above make clear, this Court does not have the authority to revisit credibility determinations made by the arbitrator – determinations that led him to conclude that Sewell did not make the alleged threat.  *See, e.g.*, *Niagara Mohawk*, 143 F.3d at 714-15.  Moreover, for the reasons discussed *infra*, the Court does not find the arbitrator was practicing his "own brand of industrial justice."

The Second Circuit has "explicitly rejected irrationality as a separate basis for vacating an arbitrator's award under the Federal Arbitration Act."  *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension & Welfare Funds  v. Thalle/Transit Construction Joint Venture*, No. 12-CV-5661(JFB)(ARL), 2014 WL 3529728, at *5 n.2 (E.D.N.Y. July 15, 2014) (citing *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 139 (2d Cir. 2007)).  Although the FAA does not apply in the present case, "the stringent standard for vacating an arbitration award is materially the same under the FAA [and the] Labor Management Relations Act."  *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 754 F.3d 109, 112 n.4 (2d Cir. 2014).  Thus, irrationality is unlikely an appropriate ground for

6

vacating a labor arbitration award.  *See Thalle/Transit Construction*, 2014 WL 3529728, at *5 n.2.  But even if it were, the Court finds that the award in the instant case is not irrational.  The arbitrator faced conflicting testimony and evidence, weighed the credibility of the testimony, and made findings of fact.  In doing so, he found that the evidence was inadequate to conclude that Sewell threatened to return from her break with a shotgun.  The arbitrator did not ignore the testimony of Montes and Santiago.  Instead, the arbitrator considered the testimony but found it not to be credible.

Although "nearly total deference" is given to arbitral decisions, a court may not enforce an award pursuant to a collective bargaining agreement that is contrary to public policy.  *Local 97, Int'l Bhd. of Elect. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 125 (2d Cir. 1999) (citing *W.R. Grace & Co. v. Local Union 759 Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983)).  This public policy exception, however, is "extremely limited," and does not provide this Court with the "'authority to disagree with [the arbitrator's] honest judgment' about the proper remedy to be awarded in a given case."  *Id.* (citing *Misco*, 484 US. at 38).  When reviewing the arbitrator's award, the Court is limited to determining "whether the *award itself*, *as contrasted with the reasoning that underlies the award*, 'create[s] [an] explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy."  *Niagara Mohawk*, 143 F.3d at 716 (quoting *Misco*, 484 U.S. at 43) (emphasis added).

If the arbitrator had found that Sewell said "I'm going to get my shotgun" but nonetheless awarded her reinstatement, St. Barnabas may have had a meritorious argument that the award contravened public policy regarding violence in the workplace.  But the arbitrator concluded that St. Barnabas had not demonstrated that Sewell made the threat.  Because the arbitrator's

"assessment of the facts are dispositive," *N.F.L. Mgmt. Council,* 820 F.3d at 536, the Court cannot conclude that reinstating an employee who was *not* found to have made a threatening statement violates public policy.  In asking the Court to vacate the award as a violation of public policy, St. Barnabas is again asking the Court to second guess the arbitrator's factual findings, which it cannot do.

Respondent has moved for attorneys' fees on the basis that Petitioner had no justification to vacate the award.  Resp. Opp. at 9; Resp. Reply at 4.  Notwithstanding the obvious flaws in Petitioner's arguments, the Court declines to award attorneys' fees to Respondent.  Given the seriousness of the alleged threat and in acknowledgement of Petitioner's difficult position upon learning of the alleged threat, it is inappropriate to award attorneys' fees.

## CONCLUSION

For the foregoing reasons, the petition to vacate the arbitration award is DENIED, and the cross motion to confirm the arbitration award is GRANTED.  The February 12, 2016 arbitration award is CONFIRMED in full.  The Court DENIES Respondent's request to impose costs and attorneys' fees on Petitioner.  The Clerk of Court is respectfully directed to close the case.


**SO ORDERED.**

**Date:  August 2, 2016**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

8